## IN THE UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| CRED INC. LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 22-50134 (JTD) |
| | ) | |
| v. | ) | |
| | ) | |
| WINSLOW CARTER STRONG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF WINSLOW CARTER STRONG'S MOTION TO DISMISS ALL COUNTS IN THE COMPLAINT OR, ALTERNATIVELY AS TO COUNT V, TO STRIKE THE RELIEF SOUGHT

THE ROSNER LAW GROUP LLC
Frederick B. Rosner
Jason A. Gibson
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Tel.:  (302) 777-1111
Email:  rosner@teamrosner.com
          gibson@teamrosner.com

ARENTFOX SCHIFF LLP
Mary Joanne Dowd, Esq.
Jackson D. Toof, Esq.
1717 K Street, N.W.
Washington, DC  20006
Tel.: (202) 857-6000
Email:  mary.dowd@afslaw.com
          jackson.toof@afslaw.com

WILLIAMS & CONNOLLY LLP
Ellen E. Oberwetter, Esq
Stephen L. Wohlgemuth, Esq.
680 Maine Ave., S.W.
Washington, DC  20024
Tel.:  (202) 434-5000
Email:  eoberwetter@wc.com
          swohlgemuth@wc.com

Dated: May 4, 2022

*Counsel to Winslow Carter Strong*

{00033265. }

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II.   FACTUAL BACKGROUND .................................................................................3

III.  STANDARD ON A MOTION TO DISMISS ....................................................6

IV.   ARGUMENT ...............................................................................................8

    A.    The Court Should Dismiss All Counts Because the Transfer Was in Satisfaction of an Antecedent Debt that Cred Owed Strong...................8

    B.    Other Pleading Deficiencies Render the Complaint's Actual and Constructive Transfer Claims Subject to Dismissal. .............................12

        1.    The Court Should Dismiss All Counts Because the Complaint Fails To Allege Which Debtor Made the Transfer. .............................12

        2.    The Court Should Dismiss the Actual Fraudulent Transfer Counts (Counts I and II) for Failure To Plead Fraud Adequately.........................15

            a.    The Standard for Actual Fraudulent Transfer under the Bankruptcy Code and Delaware Code...........................................16

            b.    The Trust Has Failed to Plead Sufficient Facts in Support of Badges of Fraud.........................................................17

        3.    The Court Should Dismiss Counts III and IV for Constructive Fraudulent Transfer for Failure To State a Claim....................................20

            a.    The Trust Does Not Adequately Allege Insolvency.....................21

            b.    The Trust Does Not Adequately Allege Undercapitalization.........................................................22

            c.    The Trust Does Not Allege an Intent To Incur Debts Beyond the Debtors' Ability To Pay. ...........................................23

    C.    The Court Should Dismiss Count V or, Alternatively, Strike the Relief Sought in Count V. .............................................................24

V.    CONCLUSION............................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### **CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................6, 7, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................6, 7

*Bos. Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987) ............................11

*Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560 (E.D. Pa. 2020) ..........24

*Delaware Nation v. Pennsylvania*, 446 F.3d 410 (3d Cir. 2006)......................................7

*In re AgFeed USA, LLC*, 546 B.R. 318 (Bankr. D. Del. 2016)...................................7, 14

*In re Am. Remanufacturers, Inc.*, 2007 WL 2376723 (Bankr. D. Del. Aug. 16, 2007)......... *passim*

*In re Amcad Holdings, LLC*, 579 B.R. 33 (Bankr. D. Del. 2017)......................................9

*In re APF Co.*, 308 B.R. 183 (Bankr. D. Del. 2004) .......................................................9

*In re Autobacs Strauss, Inc.*, 473 B.R. 525 (Bankr. D. Del. 2012)................................18

*In re Best Prod. Co., Inc.*, 168 B.R. 35 (Bankr. S.D.N.Y. 1994) ..................................25

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .......................3

*In re Champion Enterprs., Inc.*, 2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010)....................11

*In re Charys Holding Co.*, 2010 WL 2774852 (Bankr. D. Del. July 14, 2010).............................7

*In re Colonial Realty Co.*, 226 B.R. 513 (Bankr. D. Conn. 1998).................................25

*In re CRC Parent Corp.*, 2013 WL 781603 (Bankr. D. Del. Mar. 1, 2013) .................................6

*In re Crucible Materials Corp.*, 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) .....................9

*In re Direct Response Media, Inc.*, 466 B.R. ........................................................17, 18

*In re DSI Renal Holdings, LLC*, 2020 WL 550987 (Bankr. D. Del. Feb. 4, 2020) .......................25

*In re EBC I, Inc.*, 380 B.R. 348 (Bankr. D. Del. 2008) ................................................23

*In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019)......... *passim*

*In re FAH Liq. Corp.*, 2018 WL 2793944 (D. Del. June 11, 2018)...................................9

*In re Fedders N. Am., Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009) ......................16, 17, 19

*In re First Nat'l Parts Exch.*, 2000 WL 988177 (N.D. Ill. July 18, 2000) ....................................25

*In re Foxmeyer Corp.*, 296 B.R. 327 (Bankr. D. Del. 2003) ..........................................................11

*In re G–I Holdings, Inc.*, 313 B.R. 612 (Bankr. D.N.J. 2004) ........................................................16

*In re Genesis Health Ventures, Inc.*, 402 F.3d 416 (3d Cir. 2005) .................................................14

*In re GGI Properties, LLC*, 568 B.R. 231 (Bankr. D.N.J. 2017)......................................................25

*In re Great Lakes Comnet, Inc.*, 588 B.R. 1 (Bankr. W.D. Mich. 2018)........................................14

*In re Hechinger Inv. Co. of Del.*, 327 B.R. 537 (D. Del. 2005).......................................................16

*In re HH Liquidation, LLC*, 590 B.R. 211 (Bankr. D. Del. 2018)...................................................14

*In re Hill*, 342 B.R. 183 (Bankr. D.N.J. 2006)................................................................................16

*In re Incare, LLC*, 2018 WL 2121799 (Bankr. E.D. Pa. May 7, 2018) ..........................................26

*In re Insys Therapeutics, Inc.*, 2021 WL 3083325 (Bankr. D. Del. July 21, 2021)...................9, 10

*In re Insys Therapeutics, Inc.*, 2021 WL 5016127 (Bankr. D. Del. Oct. 28, 2021)................10, 12

*In re J&M Sales Inc.*, 2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022).......................................11

*In re Kane & Kane*, 2013 WL 1197609 (Bankr. S.D. Fla. Mar. 25, 2013) ...................................22

*In re McLaughlin*, 183 B.R. 171 (Bankr. W.D. Wis. 1995) ...........................................................25

*In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003 (Bankr. D. Del. June 19, 2015) ...................7, 18

*In re Opus East, LLC*, 698 Fed. App'x 711 (3d Cir. 2017) ...............................................21, 22, 23

*In re Opus East, LLC*, 528 B.R. 30 (Bankr. D. Del. 2015)......................................................10, 21

*In re Owens Corning*, 419 F.3d 195 (3d Cir. 2015).................................................................14, 15

*In re Pioneer Home Builders, Inc.*, 147 B.R. 889 (Bankr. W.D. Tex. 1992) ................................22

*In re PostRock Energy Corp.*, 2018 WL 4279472 (Bankr. W.D. Okla. Sept. 6, 2018)................12

*In re: Reagor-Dykes Motors, LP*, 2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020)............14

*In re Sawran*, 359 B.R. 348 (Bankr. S.D. Fla. 2007)....................................................................26

*In re SHC, Inc.*, 329 B.R. 438 (Bankr. D. Del. 2005).....................................................................10

*In re Terrific Seafoods, Inc.*, 197 B.R. 724 (Bankr. D. Mass. 1996)............................................22

*In re Tronox Inc.*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010)..................................................14, 25

*In re United Tax Grp.*, LLC, 2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018).......................19

*In re USDigital, Inc.*, 443 B.R. 22 (Bankr. D. Del. 2011) ..........................................9, 15

*In re Zohar III, Corp.*, 631 B.R. 133 (Bankr. D. Del. 2021) ...........................12, 17, 18

*Johnson v. Metro. Sewer Dist.*, 926 F. Supp. 874 (E.D. Mo. 1996) ...............................24

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635 (3d Cir 1991) ..................................21

*Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056 (3d Cir. 1992)......................................21, 22

*Mukamal v. Nat'l Christian Charitable Found., Inc.*, 616 B.R. 189 (S.D. Fla. 2020) .................22

*Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 78 F. Supp. 3d 556 (E.D.N.Y. 2015) .........25

*Piscopo v. Pub. Serv. Elec. & Gas. Co.*, 650 Fed. App'x 106 (3d Cir. 2016) ................................7

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ...............................................18

*Spinks v City of St. Louis Water Div.*, 176 F.R.D 572 (E.D. Mo. 1997)......................................24

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002)....................................3

## STATUTES AND RULES

6 Del. C. § 1304(a)(1) .........................................................................15, 16

6 Del. C. § 1304(a)(2).................................................................13, 20, 23

6 Del. C. § 1304(b) ......................................................................16, 17

6 Del. C. § 1305 .......................................................................13, 20

11 U.S.C. § 548 ........................................................................*passim*

11 U.S.C. § 548(a)(1)(A) .............................................................16

11 U.S.C. § 548(a)(1)(B) ..............................................................*passim*

11 U.S.C. § 548(d)(2)(A) .............................................................9

11 U.S.C. § 550.........................................................................*passim*

Fed. R. Bankr. P. 7008.................................................................2

Fed. R. Bankr. P. 7009.................................................................7

Fed. R. Bankr. P. 7012 ................................................................................................. 1, 6, 24

Fed. R. Civ. P. 8 ............................................................................................................ 2, 7

Fed. R. Civ. P. 9 .............................................................................................................. 7

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................ *passim*

Fed. R. Civ. P. 12(f) ................................................................................................ 1, 24, 27

## OTHER AUTHORITIES

https://www.coindesk.com/price/bitcoin/ ...................................................................... 25

Defendant Winslow Carter Strong ("Strong" or "Defendant"), by and through his attorneys, respectfully submits this memorandum of law in support of his motion to (i) dismiss (the "Motion" or "Motion to Dismiss") the Complaint [ECF No. 1] (the "Complaint" or "Compl.")[2] *with prejudice* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[3] made applicable to this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure for failure to state a proper claim for relief and, (ii) in the alternative and pursuant to Rule 12(f), strike the relief sought in Count V of the Complaint.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

1.      The Cred Inc. Liquidating Trust ("Plaintiff" or the "Trust") seeks to avoid the payment by Cred to Strong of 500 bitcoin (the "500 BTC") plus interest, for a total of 516.39344262 BTC (the "Transfer" or the "516 BTC"), that Cred paid to him on July 2, 2020.  The Complaint's claims to avoid the Transfer should be dismissed for multiple reasons.

2.      First, the facts pleaded support, at most, that the Transfer at issue in the Complaint was a stale preference, and therefore unavoidable.  Cred made the Transfer more than 90 days before the Petition Date, and the Complaint does not allege that Strong is an insider.  The Trust depicts the Transfer to Strong as having been made to purchase a "worthless" "Lux Bond," and thus as a transfer for no value.  But the Subscription Form that the Trust attaches to and incorporates in its Complaint makes clear that Cred was obligated to pay Strong the BTC it paid him, and so the payment was in satisfaction of a legitimate antecedent debt.  The Trust simply ignores the obligations established by the plain language of that document in the text of its

---

[2] Capitalized terms used but not defined in this Motion to Dismiss will have the meaning set forth in the Complaint. In addition, references to "ECF No." are to documents filed in this action, Case No. Adv. Proc. No. 22-50134 (JTD) (the "Adversary Proceeding").  References to "Bankr. ECF No." are to documents filed in the main chapter 11 case, Case No. 20-12836 (JTD) (the "Bankruptcy Case").

[3] All references to a Federal Rule of Civil Procedure (Fed. R. Civ. P.) will be to "Rule ___".  All references to a Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P.) will be to "Bankruptcy Rule___".

Complaint.  This problem is incurable, and warrants dismissal **_with prejudice_**, apart from the Complaint's other pleading deficiencies.

3.      Second, the Complaint fails because it does not identify the specific Cred entity that made the Transfer.  Rule 8 and Bankruptcy Rule 7008 require that the Complaint provide fair notice to Strong of the specific Debtor that seeks to claw back the Transfer so that Strong can defend the action.  The Complaint fails to do so.

4.      Third, the Complaint fails to plead facts that make plausible a claim for actual fraud. The Complaint does not allege Strong was an insider, or had the ability to exercise control or undue influence over Cred.  There is no allegation that Strong caused Cred to make the Transfer.  Nor does the Complaint put forward a motive or intention for Cred to have put the Transfer beyond the reach of Cred's other creditors.  The Complaint's best guess is that Cred paid Strong to "appease" him and maintain credibility in the investor community.  Compl. ¶¶ 148, 155.  This falls far short of alleging actual fraud.

5.      Fourth, the relief sought by the Complaint through Bankruptcy Code § 550 is not supported by law.  There, the Complaint seeks to recover either the actual BTC or a cash payment equal to the "greatest value" that BTC has had from the date of the Transfer through the end of the lawsuit.  The Trust has not pleaded any facts to support a recovery of this **_uncapped, upside appreciation of BTC_**, nor is there any legal support for a theory that so transparently seeks a windfall.

6.      Because these pleading insufficiencies cannot be cured, Strong respectfully requests that the Court dismiss Counts I-IV **_with prejudice_** under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  As Count V is wholly derivative of the first four counts, Count Five must be dismissed as well.  To the extent the Court is not inclined to dismiss Count V,

the Court should strike the "greatest value" relief sought in Count V, for the reasons set forth in Section IV.C., below.

## II.    FACTUAL BACKGROUND

7.     Cred was a cryptocurrency "yield earning" platform. Compl. ¶ 5. The Complaint uses the word "Cred" as shorthand for Cred Inc. and its "affiliated debtors," which it defines as Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC. Compl. at 1 & n.1.

8.     Strong is an individual who lent 500 BTC to Cred on January 9, 2020 (the "Loan"), pursuant to a program Cred established called CredEarn. Compl. ¶¶ 5, 48; Compl. Ex. D. Under CredEarn, "retail customers and others" loaned cryptocurrency to Cred and Cred agreed to repay those loans plus interest in cryptocurrency. Compl. ¶¶ 5, 6. Cred partnered with a company called MoKredit, which was owned by Lu Hua ("Hua"), the 50% owner and one of two co-founders and directors of Cred. Compl. ¶ 7. Cred immediately re-lent over 90% of the cryptocurrency it borrowed under CredEarn, after first converting it to dollars, to MoKredit. *Id.*

9.     Just a few weeks after Strong's Loan to Cred, his arrangement with Cred changed: Cred, through Alexander, Zhang and others, invited Strong to exchange his Loan for a note or bond issued by Cred's affiliate, a Luxembourg entity referred to as Income Opportunities (the "Lux Bond"[4] or "Note"). Compl. ¶¶ 17, 49, 51, 59, 60, 74; Compl. Ex. D at 8.3. Cred provided Strong with a "Base Prospectus" purporting to describe the investment. Compl. ¶ 62, Compl. Ex. N.[5]

---

[4] Plaintiff uses the term "Lux Bond" in the Complaint. *See* Compl. ¶ 17. Strong uses the same term for consistency.

[5] For this Motion, Strong assumes the truth of well-pleaded factual allegations in the Complaint and cites to the content of the documents that the Trust attaches to its Complaint. The Court may consider any "document integral or explicitly relied upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the Base Prospectus and Subscription Form, found at Exhibits N and O, respectively, of the Complaint, are expressly relied upon throughout the Complaint and/or are integral to the Trust's claims regarding the Transfer.

Cred also provided Strong with a "Subscription Form," which outlined terms for the transaction. Compl. ¶¶ 69-70, Compl. Ex. O.

10.    The Subscription Form provided that Strong's Loan to Cred would be "transfer[red]" as "consideration to be applied to the purchase price for the Notes." The Subscription Form further provided that the purchase price to the Issuer would be paid in U.S. Dollars. Compl. Ex. O. The "Final Terms" attached to the Subscription Form provided for a face amount of the Note of $3,939,535, and a maturity date of June 30, 2020. *Id.* The "Final Terms" document further provided that Strong would be repaid not in U.S. Dollars, but instead in "cryptocurrency tokens 1-to-1 for each cryptocurrency token paid to purchase the Notes." Compl. Ex. O.

11.    According to the documents attached to the Complaint, Cred's contractual "Calculation Agent" and "Payment Agent" obligations were substantive. Compl. Ex. O. While the Issuer was obligated to repay the Note in U.S. Dollars, the Subscription Form provided that: "***Cred LLC*** . . . ("Calculation Agent")" was to "***repay the fiat principal and interest due to Noteholder under the purchased Notes in the form of the cryptocurrency specified below and the cryptocurrency interest specified below***." Compl. Ex. O, at p 3 of 12, last row of table (emphasis added). The Final Terms of the Subscription Form, attached at Schedule 1, also named Cred LLC as the "Paying Agent." *See id*. at p 10 of 12, row No 23 ("The Paying Agent is: Cred LLC"). Under the plain language of the Subscription Form and its Final Terms, Cred thus was obligated to pay Strong 500 BTC plus interest as specified in that document.

12.    Moreover, the Trust does not allege affirmatively that the Issuer had any obligation to pay Strong the BTC identified in the Subscription Form's "Final Terms." The Subscription Form contains no provision to that effect, and the Base Prospectus confirms in its description of

the transaction that the Issuer would repay principal and interest in the currency of the Notes (*i.e.*, U.S. Dollars).  Compl. Ex. N, at viii.  According to the transaction documents attached to the Complaint, it was Cred's obligation to pay Strong an amount of BTC equal to the amount he had lent under the CredEarn program.  Ex. O (Subscription Form Final Terms).

13.    The Trust notably omits reference to these terms of the Subscription Form and Final Terms, and writes around these provisions of operative documents that it nevertheless incorporates into its Complaint.  The Complaint describes the Lux Bond not with declarative statements about the Bond's terms or Cred's role in the transaction, but by quoting Strong's statements about how he understood the Bond to operate, based on representations that Alexander, Zhang and others made to him.  Compl. ¶¶ 55-61.  The Complaint does allege that "Cred had no obligation to buy, redeem, or secure the ***Lux Bond***."  Compl. ¶ 17 (emphasis added).  But this allegation—focused on narrowly described obligations with respect to the dollar-denominated Lux Bond—ignores the direct obligation set forth in the Subscription Form that Cred LLC would pay Strong the specified cryptocurrency.  Compl. Ex. O.[6]

14.    On June 30, 2020, the Lux Bond matured, Compl. ¶ 119, Compl. Ex. O, and Cred purchased the Lux Bond from Strong and paid him 516.39344262 BTC.  Compl. ¶ 132.

15.    The Complaint alleges that the Lux Bond was "worthless" at the time Cred purchased it.  Compl. ¶¶ 1, 18.  The Complaint does not provide any basis for this conclusory characterization.  The Complaint describes Income Opportunities as "independent" from Cred; however, there is no allegation that anyone ever presented a demand to Income Opportunities for

---

[6] According to an exhibit to the Complaint, a Cred employee (Michael Zhang) asked other Cred personnel (Daniel Wheeler and James Alexander) shortly before the July 2, 2020 transfer to Strong: "Don't we have an obligation to return [Strong's] assets?"  Compl. Ex. HH.

repayment on the Lux Bond. The Complaint simply alleges, using hindsight, that Cred never obtained any repayment for the Lux Bond. Compl. ¶ 17.

16.     The Complaint alleges that Cred paid Strong the 516.39344262 BTC on July 2, 2020, because it wanted to appease Strong and maintain investor relationships for the benefit of its overall business. Compl. ¶¶ 148, 155. The Complaint does not allege, however, that Strong had any special or close relationship with or influence over any of Cred's personnel, any special insight into Cred's management or operations, or any special insight into Cred's financial condition. And the Complaint acknowledges Strong's shock at Cred's bankruptcy—more than four months after receiving the Transfer from Cred. Compl. ¶ 142.

17.     The Complaint implies that Strong profited from having been repaid the 516 BTC by Cred. The Complaint says that *if* Strong still held the same BTC that Cred repaid to him, it would be worth "more than $21 million" as of the filing of the Complaint. Compl. ¶ 1. While the Trust implies with that statement that Strong still has the 516 BTC that Cred transferred to him, it has not made inquiry as to that fact. Strong had in fact disposed of the 516 BTC that Cred paid to him before Cred filed for bankruptcy on November 7, 2021 (the "Petition Date"), lacking any knowledge of the impending bankruptcy.

## III.    STANDARD ON A MOTION TO DISMISS

18.     Under Rule 12(b)(6), made applicable here by Bankruptcy Rule 7012(b), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re CRC Parent Corp.*, 2013 WL 781603, at *4 (Bankr. D. Del. Mar. 1, 2013) ("To provide fair notice, the complainant must go beyond merely parroting statutory language."); *In re Am. Remanufacturers, Inc.*, 2007 WL 2376723, at *4 (Bankr. D. Del. Aug. 16,

2007) ("[P]laintiff needs to state more than just conclusory statements which merely echo the statutory language.").  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal,* 556 U.S. at 678.  Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562.

19.     Further, actual fraudulent transfer claims must meet the elevated pleading standards of Rule 9(b), made applicable by Bankruptcy Rule 7009.  *In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *3 (Bankr. D. Del. June 19, 2015).  Those standards apply equally to claims brought by liquidation trusts or trustees.  *E.g.*, *In re AgFeed USA, LLC*, 546 B.R. 318, 328 (Bankr. D. Del. 2016) ("As outsiders to the transactions in question, the Trustee may be put to some trouble to develop its case, but the pleading requirements under Rules 8, 9, and 12(b)(6) remain applicable."); *In re Am. Remanufacturers, Inc.*, 2007 WL 2376723, at *5 (noting that while trustees may encounter factual disarray, courts should still insure that a plaintiff provide sufficient facts for a defendant to defend itself).[7]

20.     In ruling on a motion to dismiss for failure to state a claim, the Court must consider the well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff.  *Twombly*, 550 U.S. at 558.  The Court also may consider "matters of public record, exhibits attached to the complaint, and undisputedly authentic documents" attached to the motion. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006); *Piscopo v. Pub. Serv. Elec. & Gas. Co.*, 650 Fed. App'x 106, 109 (3d Cir. 2016) (affirming consideration of transaction documents that were integral to plaintiff's allegations).

---

[7] While some courts have suggested that the standards of Rule 9(b) may be construed less strictly in the context of an action brought by a trustee, *In re Charys Holding Co.*, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010), Rule 9(b) contains no such exception.

21.     Here, the Trust's numerous pleading deficiencies, as detailed below, warrant dismissal.  Not only do the transaction documents warrant dismissal, but the Complaint fails to provide information necessary for Strong to formulate his defenses.  The Trust's threadbare recitals of the elements of its causes of action, in conclusory fashion, do not suffice to state valid claims.  Accordingly, the Court should dismiss the Complaint for failure to state a claim.

## IV.     ARGUMENT

### A.     The Court Should Dismiss All Counts Because the Transfer Was in Satisfaction of an Antecedent Debt that Cred Owed Strong.

22.     The Court should dismiss the Complaint because it seeks to avoid the Transfer based on the allegation that Cred received no consideration for the Transfer.  The Complaint and its incorporated documents affirmatively reveal, however, that Cred had a direct payment obligation to Strong in the amount of the Transfer.  From the standpoint of the Trust's constructive fraud claims, this means Cred obtained reasonably equivalent value by paying him on an antecedent debt.  From the standpoint of the Trust's actual fraud claims, if Cred paid Strong what it owed him, the remainder of the Complaint's actual fraud allegations become even thinner: Cred paid Strong to repay a debt when it became due, not to deprive other creditors of funds.

23.     The language in the Subscription Form is clear.  That document and its attached "Final Terms", Compl. Ex. O, say expressly that *Cred LLC* was to "repay the fiat principal and interest due to Noteholder [Strong] under the purchased Notes in the form of the cryptocurrency specified below and the cryptocurrency interest specified below," on the June 30, 2020 Maturity Date specified.  Compl. Ex. O; *supra*, ¶ 11.  The form of the cryptocurrency specified was "BTC," in a payment amount that was "1-for-1 for each cryptocurrency token paid to purchase the Notes." *Id.*  The Subscription Form then recites that the amount paid to purchase the Notes was the amount

"pledged or loaned to Calculation Agent under the Existing Cred Contract," Compl. Ex. O ¶ 2, which was 500 BTC.  Compl. ¶¶ 47-48.

24.     Dismissal is appropriate where the plaintiff fails to set out sufficient factual matter to support that it did not receive a return of reasonably equivalent value.  *In re USDigital, Inc.*, 443 B.R. 22, 39-40 (Bankr. D. Del. 2011) (trustee did not plead adequate facts to support absence of reasonably equivalent value).

25.     While there are cases within the Third Circuit to the effect that valuation questions embedded in the "reasonably equivalent value" test are not susceptible of resolution on a motion to dismiss, *e.g.*, *In re FAH Liq. Corp.*, 2018 WL 2793944, at *5 (D. Del. June 11, 2018); *In re Insys Therapeutics, Inc.*, 2021 WL 3083325, *6 (Bankr. D. Del. July 21, 2021) (Dorsey, J.), and typically the issue of reasonably equivalent value requires testing through the discovery process, such authority is not applicable (nor is such testing required) in a situation like the present one where there is no fact-bound "valuation" question, and the payment was on an antecedent debt. *See* 11 U.S.C. § 548(a)(1)(B)(i) & (d)(2)(A) ("value" includes "satisfaction … of a present or antecedent debt"); *In re Amcad Holdings, LLC*, 579 B.R. 33, 41-42 (Bankr. D. Del. 2017) (dismissal of constructive fraudulent transfer appropriate where pleaded facts showed payment on a preexisting obligation); *In re Crucible Materials Corp.*, 2012 WL 5360945, *8 (Bankr. D. Del. Oct. 31, 2012) (payment on an existing payment obligation resulted in dismissal); *In re APF Co.,* 308 B.R. 183, 187 (Bankr. D. Del. 2004) (complaint failed to adequately allege a constructive fraud count where the Debtor's payments on a prepetition promissory note satisfied an antecedent debt).

26.     The Trust does not allege that the value that Strong received (500 BTC plus specified interest) was different than the amount he was owed (500 BTC plus specified interest).

*See In re Opus East, LLC*, 528 B.R. 30, 83 (Bankr. D. Del. 2015) ("Payments made on account of valid antecedent debts are presumptively made for reasonably equivalent value."); *compare In re Insys Therapeutics, Inc.*, 2021 WL 3083325, *6 (plaintiff alleged that the services received were not worth what was paid for them).

27.     Rather, the only question the Trust poses in its Complaint is whether ***Cred*** owed the BTC and specified interest to Strong.  The language in the Subscription Form answers this question, and no bald allegations to that contrary could change that plain language.  *In re SHC, Inc.*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) (court need not credit pleaded facts contradicted by incorporated transaction documents); *see also In re Insys Therapeutics, Inc.*, 2021 WL 5016127, at *4 (Bankr. D. Del. Oct. 28, 2021) (Dorsey, J.) (dismissing a fraudulent transfer claim where trustee's allegations inadequately supported that the debtor making the transfer was not the party that incurred the debt).

28.     Indeed, a close reading of the Complaint reflects studied ambiguity on the nature of Cred's obligations, and whether it had any.  The Trust seeks to create the impression that Cred's Transfer was a gratuitous payment for a "worthless" "Lux Bond."  For example, the Trust says that Cred had no obligation to Strong on the Lux Bond, Compl. ¶ 17 (Cred had "no obligation to buy, redeem, or secure the Lux Bond"), ¶ 132 (Cred did not have "any obligations to purchase the Lux Bond"), and that Cred had ceased to have obligations under the "CredEarn" program.  Compl. ¶ 72.  But the Trust never alleges that Cred did not have other contractual obligations to Strong, such as in the written agreement that it would pay him in BTC on the maturity date in the specified amount.

29.     Remarkably, the Complaint does not even contain an allegation that, in fact, a bond was issued to Strong.  The existence of the Lux Bond issued to Strong by a third party is

fundamental to the Trust's theory that Cred bought a worthless bond as to which Cred had no payment obligation. *E.g.*, Compl. ¶¶ 1, 17, 120, 132. While the Trust insinuates that such a Bond issued, it does not expressly say so or attach a bond or note document among the voluminous exhibits to its Complaint. Instead of affirmatively describing the Lux Bond or straightforwardly stating that such an instrument issued in favor of Strong, the Trust simply includes numerous paragraphs purporting to quote Strong's understanding of the Lux Bond as had been described to him by others. Compl. ¶¶ 55-73.

30.    If Cred owed the 516 BTC to Strong, as it plainly did, that would warrant dismissal not only of its constructive fraudulent transfer claim, but its actual fraudulent transfer claims as well. While those claims (Counts I and II) suffer from other deficiencies, discussed below, at § IV.B.2, multiple courts have recognized that a payment made pursuant to a legal obligation is not tantamount to a fraudulent conveyance. *See, e.g., In re Champion Enterprs., Inc*., 2010 WL 3522132, at *20 (Bankr. D. Del. Sept. 1, 2010); *In re Foxmeyer Corp.*, 296 B.R. 327, 337 (Bankr. D. Del. 2003) ("a debtor can favor, indeed prefer, any one or several of its unsecured creditors … to the detriment of such debtor's remaining unsecured creditor body" without that being a fraudulent transfer); *Bos. Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1508 (1st Cir. 1987) (paying one creditor over another is a preference, not a fraudulent conveyance).

31.    As a result of Cred's payment obligation to Strong, the Court should dismiss (i) the Trust's actual and constructive fraudulent transfer claims (Counts I, II, III and IV), and (ii) Count V, as it is a remedy for Counts I-IV. And, it should dismiss the Complaint **with prejudice**, because no amendment can change the plain language of the Subscription Form. *In re J&M Sales Inc.*, 2022 WL 532721, at *2 (Bankr. D. Del. Feb. 22, 2022) (Dorsey, J.) (amendment would be futile where the amendment will not cure the deficiency in the original complaint).

**B.**    **Other Pleading Deficiencies Render the Complaint's Actual and Constructive Transfer Claims Subject to Dismissal.**

      **1.**    **The Court Should Dismiss All Counts Because the Complaint Fails To Allege Which Debtor Made the Transfer.**

32.    Separately, the Court should dismiss all claims because the Complaint fails to specify which Cred debtor or debtors made the Transfer.  The Complaint supplies a tidy definition of "Cred" as encompassing all of the Cred entities that have filed for bankruptcy, listing them in a footnote.  Compl. at 1.  It then skips past any further discussion of which entity made the Transfer, or which entity (if any) was thereby rendered insolvent or undercapitalized, alleging throughout the Complaint only that "Cred" transferred "516.39344262 BTC to Strong to execute" the bond purchase that is the subject of its Complaint.  Compl. ¶ 159.  This will not do.

33.    To state a claim for either actual or constructive fraudulent transfer, a plaintiff must identify, at a minimum, the specific debtor that made the transfer at issue.  *E.g.*, *In re Zohar III, Corp.*, 631 B.R. 133, 170 (Bankr. D. Del. 2021) (fraudulent transfer claims will withstand dismissal where they apprise defendant of "*inter alia*, the transferor, the transferee, the amount of the transfer, and relevant date").  A fraudulent transfer claim that fails to identify which *particular* debtor made the transfer, as is the case here, is deficient as a matter of law and should be dismissed.  *See*, *e.g.*, *In re Am. Remanufacturers, Inc.*, 2007 WL 2376723, at *4 (dismissing constructive fraudulent transfer claim where "nowhere in the Complaint does the Trustee indicate **which** of the Debtors or affiliates made the transfers") (emphasis in original); *In re PostRock Energy Corp.*, 2018 WL 4279472, at *4 (Bankr. W.D. Okla. Sept. 6, 2018) (dismissing constructive fraudulent transfer claim where "the Complaint does not indicate which of the six PostRock Debtors allegedly made the Transfer to Klvac"); *In re Insys Therapeutics, Inc.*, 2021 WL 5016127, *4-5 (trustee did not allege adequate facts as to identity of transferor).

34.     For a constructive fraud claim, it is critical that a plaintiff identify the specific entity that made the transfer because a component of the test for a constructive fraudulent transfer turns on the financial condition of the transferring entity.  Pursuant to Bankruptcy Code § 548(a)(1)(B), it must be true that the debtor received "less than reasonably equivalent value" for the transfer and:

(I)     was insolvent on the date that such transfer was made…

(II)    was engaged in business or a transaction … for which any property remaining with the debtor was an unreasonably small capital; [or]

(III)   intended to incur, or believed that debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured…

11 U.S.C. § 548.  The Delaware constructive fraud statute provides substantially the same test for purposes of this Motion to Dismiss.  6 Del. C. § 1304(a)(2); 6 Del. C. § 1305.

35.     The Complaint fails to allege **which** Cred entity or entities supposedly satisfied these standards, including whether the entity that made the Transfer to Strong satisfied them. Courts have made clear that claims of this sort must have sufficient specificity about the financial condition of the transferor in question.  *See In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *11 (Bankr. D. Del. Sept. 6, 2019) (dismissing complaints for constructive fraudulent transfer where "the Complaints do not contain any specific allegations regarding Debtors' assets or liabilities at the time of each transfer"); *In re Am. Remanufacturers, Inc.*, 2007 WL 2376723, at *4 (dismissing constructive fraudulent transfer claim and agreeing with defendant that plaintiff did not allege "any facts concerning how or why any particular Debtor was either insolvent when the alleged fraudulent transfer was made or rendered insolvent by making the alleged fraudulent transfer").

36.     The failure to specify which entity made the Transfer also warrants dismissal of the Complaint's actual fraudulent transfer claim, where allegations are governed by Rule 9(b)'s

heightened pleading requirements.  *See*, *e.g.*, *In re AgFeed USA, LLC*, 546 B.R. at 337 (dismissing actual fraudulent transfer claim where "[t]he complaint does not articulate which entity made any of the alleged transfers" but instead "alleges that the transfers were made by '[AFI] and related entities or by entities with a business relationship to [AFI],'" which "falls well short of the particularity requirements of FRCP 9(b)");  *In re Great Lakes Comnet, Inc.,* 588 B.R. 1, 21 (Bankr. W.D. Mich. 2018) (requiring actual fraud complaint to contain "specific information with respect to each transfer," including the identity of the transferor); *In re: Reagor-Dykes Motors, LP,* 2020 WL 4939180, at *11 (Bankr. N.D. Tex. Aug. 24, 2020) (actual fraud claims dismissed where plaintiff failed to identify the specific debtor-transferor); *In re Tronox Inc*., 429 B.R. 73, 93 (Bankr. S.D.N.Y. 2010) (motion to dismiss denied where transferors were individually identified, and Complaint adequately identified each transfer made, obligation incurred and the particular entity involved in the line of succession).

37.    There is no justification for the Complaint to omit entity-specific allegations.  The Cred entities have not been substantively consolidated, so there is no legal basis for treating them as one.[8]  *See In re HH Liquidation, LLC*, 590 B.R. 211, 261 (Bankr. D. Del. 2018) (noting that "Delaware courts take the corporate form and corporate formalities very seriously") (internal citation omitted).  Indeed, substantive consolidation is an extraordinary remedy to be used sparingly, "no[t] a 'free pass' to spare Debtors or any other group from proving challenges, like fraudulent transfer claims, that are liberally brandished to scare yet are hard to show." *In re Owens*

---

[8] The Debtors' Plan and the Court's Confirmation Order provided for deemed substantive consolidation for the limited purposes of voting and creditor distributions only and did not otherwise affect the legal and organizational structures of the Debtors.  ECF No. 629 at ¶ 14; ECF No. 629-1 at Arts. 7.3, 12.1.  As the Third Circuit made clear in *Genesis Health*, deemed consolidation in a plan does not result in de facto substantive consolidation.  *In re Genesis Health Ventures, Inc*., 402 F.3d 416, 424 (3d Cir. 2005).

*Corning*, 419 F.3d 195, 209, 215 (3d Cir. 2015).  The Court should not permit the Trust to use such a shortcut to avoid its pleading burdens.

38.    Because the Complaint fails to identify the specific Debtor that made the Transfer, or the insolvency of that Debtor-transferor, the Court should dismiss the Complaint's actual and constructive fraudulent transfer claims (Counts I, II, III and IV), and also Count V, as it sets forth the remedy sought for Counts I-IV.  *See In re USDigital, Inc.*, 443 B.R. at 40 (dismissing § 550 claim that was based on dismissed fraudulent transfer claims).

> **2.    The Court Should Dismiss the Actual Fraudulent Transfer Counts (Counts I and II) for Failure To Plead Fraud Adequately.**

39.    In addition to the foregoing pleading deficiencies, the Court should dismiss Counts I and II of the Complaint because the facts alleged in the Complaint – accepted as true for the purposes of a motion to dismiss – do not amount to actual fraud under either 11 U.S.C. § 548 or 6 Del. C. §§ 1304(a)(1).  The allegations in the Complaint simply do not reflect the "badges of fraud" typically considered by courts to determine whether a plaintiff can make a showing of actual fraud.

40.    The Complaint's "actual fraud" allegations consist exclusively of an allegation that "Cred" was insolvent at the time of the transfer to Strong, coupled with a conclusory allegation that the transfer was to "hinder, delay, or defraud its creditors" "for the purpose of appeasing a high profile investor with personal ties to Cred executives to the detriment of Cred's actual creditors."  Compl. ¶¶ 148, 155.  Recitation of the statutory standard paired with a vacuous statement about "personal ties" does not suffice to illustrate that Cred had a fraudulent motive to deprive other creditors of funds.  Indeed, the Complaint affirmatively alleges that Cred paid Strong to "appease" Strong, not to defraud anyone else.  Compl. ¶¶ 125, 126, 148, 155.

**a.    The Standard for Actual Fraudulent Transfer under the Bankruptcy Code and Delaware Code.**

41.    The standards for actual fraudulent transfers under the Bankruptcy Code and Delaware law are not materially different for purposes of this Motion to Dismiss.  To avoid a transfer under Bankruptcy Code § 548(a)(1)(A), a plaintiff must show that the transaction was made "with actual intent to hinder, delay or defraud" creditors. 11 U.S.C. § 548(a)(1).   The statutory standard under Delaware Code § 1304(a)(1) is the same.  Actual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another. Actual fraud, compared to merely constructive fraud, requires wrongful intent and cannot be implied by law." 4 Collier on Bankruptcy ¶ 523.08[1][e] (A.N. Resnick & H.J. Sommer eds., 16th ed. 2015).

42.    Because direct evidence of fraudulent intent is often unavailable, courts permit plaintiffs to rely on circumstantial evidence to infer fraudulent intent.  *In re Hechinger Inv. Co. of Del.,* 327 B.R. 537, 550-51 (D. Del. 2005); *see also In re Hill,* 342 B.R. 183, 198 (Bankr. D.N.J. 2006) ("courts may infer actual intent by examining the circumstances and considering whether various 'badges of fraud' are present") (citing *In re G–I Holdings, Inc.,* 313 B.R. 612, 640-41 (Bankr. D.N.J. 2004)).  The "badges of fraud" that courts in the Third Circuit often refer to include, but are not limited to: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction.  *In re Fedders N. Am., Inc.,* 405 B.R. 527, 545 (Bankr. D. Del. 2009).

43.    The badges of fraud under Delaware Code § 1304(b) are very similar to the federal law badges of fraud.  Courts applying Delaware law consider whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Del. Code Ann. tit. 6, § 1304 (West).

44.    The standards under Delaware law and § 548 are sufficiently similar that courts considering both typically treat them the same.  *See In re Direct Response Media, Inc.*, 466 B.R. at 653, n.17 ("Delaware law, 6 Del. C. § 1304(b)(1), contains the same standard for fraudulent transfer as the Code, namely, the "actual intent to hinder, delay or defraud"); *see also In re Zohar III, Corp.*, 631 B.R. at 174 (addressing Delaware State law and section 548 concurrently); *In re Fedders N. Am., Inc.*, 405 B.R. at 547 (same).

### b.    The Trust Has Failed to Plead Sufficient Facts in Support of Badges of Fraud.

45.    The Trust's "actual fraudulent transfer" allegations do not resemble the types of allegations that suffice to plead even circumstantial fraudulent intent.  While the Complaint

contains recitations of the statutory standard, Compl. ¶¶ 148, 155, those recitations are exactly the sort of conclusory statements that will not suffice under even the *Twombly/Iqbal* standard—much less the requirements of Rule 9(b).  *See Iqbal,* 566 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not survive a motion to dismiss); *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("A court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

46.    The Complaint's principal allegation is that Cred transferred BTC to Strong because he was a high-profile investor and Cred wanted to "appease" him.  Compl. ¶¶ 148, 155. This allegation falls far short of plausibly pleading that in making the Transfer, Cred intended to deprive ***other*** creditors of funds, which is the fundamental test the Trust must satisfy.

47.    The Complaint also lacks other allegations that satisfy the "badges of fraud."  For example, in assessing whether a transferor had the requisite fraudulent intent, courts tend to weigh heavily whether a transferee is a former or current officer, director or owner who uses their position of control over the debtors to divert resources to a related individual or business entity.  This pattern pervades the decisions in the Third Circuit finding actual fraudulent intent, as such relationships are more consistent with an effort to stash funds away from the reach of creditors.  *See In re Zohar III, Corp.,* 631 B.R. at 174 (motion to dismiss denied where plaintiff alleged an "insider relationship between all relevant parties, retention of control of transferred property, either insufficient or no consideration for the challenged transfers, and insolvency"); *In re Nat'l Serv. Indus., Inc*., 2015 WL 3827003, at *5 (motion to dismiss denied where plaintiff alleged transfer to insiders, insolvency, and lack of consideration); *In re Direct Response Media, Inc.,* 466 B.R. at 654 (motion to dismiss denied where plaintiff alleged transferor received no consideration and transferees were insiders); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 565 (Bankr. D. Del. 2012)

(motion to dismiss denied where transferees were insiders).  There are no such allegations here; only that Cred and Strong had unspecified "personal ties."

48.     The Complaint does not attempt to engage with most of the other "badges of fraud" that could make plausible an inference of fraudulent intent.

    a. **Reservation of benefits, control or dominion by the Debtor over transferred Property:** The Complaint does not allege that Cred maintained any control over the transferred BTC after the purchase of the Lux Bond.

    b. **Large Portion of Estate Transferred:**  The Complaint alleges that the estate's resources were "limited" (Compl. ¶ 132) but does not allege that 500 BTC was a large portion of the estate (for example, the Complaint admits that Cred lost 800 BTC in a separate transaction. *See* Compl. ¶ 112).  The Trust also alleges that the estate lost over 4000 BTC in March 2020 (Compl. ¶ 102).

    c. **Consideration for the Transfer:** The Complaint alleges the Lux Bond was "worthless" (Compl. ¶ 119) but admits that Cred purchased it in order to increase goodwill with investors generally—not just Strong (Compl. ¶¶ 125-126).  Beyond that, as set forth above, the "Final Terms" attached to the Complaint reflect that Cred LLC was obligated to pay Strong 500 BTC plus interest on the maturity date. Compl. Ex. O; *supra*, ¶ 11.

    d. **Secrecy or Concealment of Transaction**: No secrecy or concealment is alleged. In fact, the Complaint suggests that Cred intended the Lux Bond purchase to be highly public, so that Cred could maintain its reputation with other investors and attract additional investment down the road.  Compl. ¶¶ 125-126.

49.     While the Complaint contains allegations about Cred's alleged insolvency (which allegations are themselves conclusory, *see infra*, at § IV.B.3.a), the alleged insolvency of the transferor alone is not sufficient.  If it were, there would be no difference between actual and constructive fraudulent transfer claims.  *See, e.g., In re Fedders N. Am., Inc.*, 405 B.R. at 545 (dismissing actual fraudulent transfer claim where the pleaded facts did not reflect anything other than an arm's length relationship).

50.     Courts view skeptically and dismiss actual fraudulent transfer claims where allegations in support of badges of fraud are so thin.  *In re United Tax Grp.*, LLC, 2018 WL 1135496, at *11 (Bankr. D. Del. Feb. 28, 2018) (denying motion to amend complaint where trustee

failed to allege multiple badges of fraud).  The Trust simply has not pleaded facts here to support

that Strong was or plausibly would have been the recipient of an actual fraudulent transfer.

### 3. The Court Should Dismiss Counts III and IV for Constructive Fraudulent Transfer for Failure To State a Claim.

45.   The Trust has failed to plead adequate facts to support its Counts III and IV for

constructive fraudulent transfer, not only because it has failed to plead an absence of "reasonably

equivalent value," *supra*, § IV.A, but because it has not alleged sufficient facts to show that Cred

satisfied the financial conditions set forth in § 548(a)(1)(B).

46.   To support a claim for constructive fraudulent transfer, the Trust must plead under

Bankruptcy Code that Cred received "less than reasonably equivalent value" for the transfer and

that it:

> (IV)   was insolvent on the date that such transfer was made…
>
> (V)    was engaged in business or a transaction … for which any property remaining with the debtor was an unreasonably small capital; [or]
>
> (VI)   intended to incur, or believed that debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured…

11 U.S.C. § 548.  The Delaware constructive fraud statute is not meaningfully different for

purposes of this Motion to Dismiss.  6 Del. C. § 1304(a)(2); 6 Del. C. § 1305.

46.   The Trust's allegations as to each of these elements is impermissibly conclusory,

and subject to dismissal on that basis.  The Trust alleges only that "[o]n the date of the Bond

Purchase, July 2, 2020, Cred was insolvent and remained insolvent as a result of the Bond

Purchase, had unreasonably small capital, and incurred or intended to incur debts beyond its ability

to pay as such debts matured."  Compl. at ¶¶ 161, 168.  These allegations merely parrot the

statutory language of the Bankruptcy Code and Delaware UFTA.[9]   Accordingly, the Court should dismiss Counts III and IV.

### a.      The Trust Does Not Adequately Allege Insolvency.

47.      The Complaint does not plausibly allege a claim for constructive fraudulent transfer under the insolvency prong of the constructive fraudulent transfer analysis.

48.      Insolvency is determined 'as of the time of the conveyance.'"   *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1066 (3d Cir. 1992) (internal citation omitted); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 648 (3d Cir 1991) ("Under section 548, insolvency is to be measured at the time the debtor transferred value or incurred an obligation.").   To make this determination, a trustee should plead balance sheet information or similar information to allow it to determine whether the transferring debtor's liabilities exceeded its assets at the time of the transfer.   *See In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *11 (dismissing complaints for constructive fraudulent transfer where "the Complaints do not contain any specific allegations regarding Debtors' assets or liabilities at the time of each transfer"); *see also In re Opus East LLC*, 698 Fed. App'x 711, 715 (3d Cir. 2017) ("[A] debtor is insolvent if the sum of its liabilities is greater than the sum of its assets, at fair valuation.").

49.      Here, the Complaint contains no allegations about any of the Debtors' assets and liabilities as of July 2, 2020, when the transfer was made—let alone the assets and liabilities of the particular Debtor that made the transfer.   *See supra* § IV.B.1.   These deficiencies require dismissal.

---

[9] On the standards at issue here, the Delaware UFTA is substantially similar to Bankruptcy Code § 548.   *See, e.g., In re Opus East, LLC*, 528 B.R. at 83 ("The elements for avoidance of a fraudulent transfer under Delaware law are essentially identical to those of section 548(a)(1)(B).").

**b.      The Trust Does Not Adequately Allege Undercapitalization.**

50.      The Trust also fails to allege any of the Debtors had unreasonably small capital. "Undercapitalization is a distinct concept from insolvency." *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *17. "[U]nreasonably small capital denotes a financial condition short of equitable insolvency" and the test is "reasonable foreseeability." *Moody*, 971 F.2d at 1070, 1073. "An entity has unreasonably small capital if it lacks the ability to generate sufficient profits to sustain operations." *In re Opus East LLC*, 698 Fed. App'x at 715.

51.      Further, courts have held that a plaintiff must show that the challenged transfer *caused* the lack of sufficient capital. *E.g.*, *In re Kane & Kane*, 2013 WL 1197609, at *10 (Bankr. S.D. Fla. Mar. 25, 2013) (requiring "causal relationship" between the Transfers and the likelihood of business failure); *In re Pioneer Home Builders, Inc.*, 147 B.R. 889, 894 (Bankr. W.D. Tex. 1992) (same); *In re Terrific Seafoods, Inc.*, 197 B.R. 724, 736 (Bankr. D. Mass. 1996) (court considered whether the transfer "caused" the debtor to "engage in a[n] [undercapitalized] business"); *Mukamal v. Nat'l Christian Charitable Found., Inc.*, 616 B.R. 189, 196 (S.D. Fla. 2020) (same).

52.      The Trust has not supplied facts to show that the Transfers caused the relevant transferor (as opposed to "Cred") to become undercapitalized. The Trust does not allege how much capital the particular debtor that made the Transfer had either before or after the Transfer to plausibly show the Transfer caused Cred's undercapitalization. It does not allege information sufficient to draw any inference that it was reasonably foreseeable that "Cred" lacked the ability to generate sufficient profits to sustain operations post-Transfer. Nor does it plead facts to show that the Transfer *caused* any undercapitalization.[10]

---

[10] Indeed, the very documents the Trust has attached to its Complaint suggest otherwise. In discussing the Transfer, Zhang indicated on June 22, 2020, that he had "711 BTC coming in by the end of this week" and that "[t]his can

53.     The Trust thus has failed to plead undercapitalization as a basis for its constructive fraudulent transfer claim.

### c.     The Trust Does Not Allege an Intent To Incur Debts Beyond the Debtors' Ability To Pay.

54.     Finally, the Trust does not allege any facts indicating that any of the Debtors had an intent to incur debts beyond its ability to pay.  11 U.S.C. § 548(a)(1)(B)(ii)(III); 6 Del. Code. § 1304(a)(2).

55.     Under this prong, the Trust must show that the debtor made the transfer "contemporaneous with an intent or belief that subsequent creditors likely would not be paid as their claims matured."  *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *19 (citing 5 Collier on Bankruptcy ¶ 548.05 (16th ed. 2019)); *In re EBC I, Inc.*, 380 B.R. 348, 359 (Bankr. D. Del. 2008).  This "'forward looking' test requires assessing the debtor's reasonable prediction about its ability to repay a debt as it is incurred."  *In re Opus East LLC*, 698 Fed. App'x at 715.

56.     Here, the Complaint contains no allegation suggesting that any of the Debtors had an intent or belief that subsequent creditors would not be paid.  If anything, the Complaint suggests the opposite—that Cred made the Transfer because of its obligations to Strong and to maintain relationships with its investors.  Compl. at ¶¶ 125-126.  This renders implausible any narrative that suggests that at the time of the challenged transfer, Debtors intended to incur debts beyond their ability to pay.

57.     In short, because the facts alleged in support of Counts III and IV are conclusory allegations which are undermined by the contents of the Complaint and the exhibits attached

---

provide the liquidity we need to return [Strong's] assets" of less than 517 Bitcoin.  Compl. Ex. HH.  Further, following the Transfer, the Trust received commitments for more than $5 million in capital.  *Id.* at ¶ 140.

thereto, the Court should dismiss those claims.

### C. The Court Should Dismiss Count V or, Alternatively, Strike the Relief Sought in Count V.

65.     Count V is for "Recovery of Avoided Transfer" under Bankruptcy Code § 550, and sets forth the Trust's proposed relief based on Counts I-IV for actual and constructive fraudulent transfer.   Compl. ¶¶ 170-173.   As relief, the Trust claims entitlement to "the greater of (i) 516.39344262 BTC, and (ii) cash in an amount equal to the greatest value of 516.39344262 BTC at any time since the Bond Purchase."   Compl. ¶ 173.

67.     The Court should dismiss Count V in the first instance because it is derivative of Counts I-IV; it should be dismissed if Counts I-IV are dismissed for the reasons discussed above. If, however, some of the preceding claims survive a motion to dismiss, the Court should still dismiss—in part—the relief sought in Count V, as unsupported by law and contrary to the facts pleaded in the Complaint.   In the alternative, the Court should strike the portion of Count V that seeks to recover the "greatest value" of the BTC pursuant to Rule 12(f).[11]

68.     There is no legal basis for the Trust to claim entitlement to an amount of cash equal to the greatest value 516 BTC has ever had "*at any time*" since the Transfer, which, presumably, includes a going-forward basis.   Compl. § 173 (emphasis added).

69.     Bankruptcy Code § 550(a)(1) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value

---

[11] A party may move to strike any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (made applicable to this proceeding per Bankruptcy Rule 7012).  "[A] prayer for relief not available under applicable law, or which asserts a damage claim in excess of the maximum recovery permitted by law, is properly subject to a motion to strike."  *Spinks v City of St. Louis Water Div.*, 176 F.R.D 572, 574 (E.D. Mo. 1997); *accord Johnson v. Metro. Sewer Dist.*, 926 F. Supp. 874, 875 (E.D. Mo. 1996); *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 574 (E.D. Pa. 2020).

> of such property, from [...] the initial transferee of such transfer or
> the entity for whose benefit such transfer was made."

When issuing a judgment under Bankruptcy Code § 550, bankruptcy courts consider which remedy "would more appropriately restore the bankruptcy estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re GGI Properties, LLC*, 568 B.R. 231, 258 (Bankr. D.N.J. 2017).

70.     Courts typically award fraudulent transfer plaintiffs a value equal to the amount transferred to the fraudulent transfer recipient as of the time of the transfer.  *In re First Nat'l Parts Exch.*, 2000 WL 988177, at *10 (N.D. Ill. July 18, 2000); *In re Colonial Realty Co.*, 226 B.R. 513, 525-26 (Bankr. D. Conn. 1998); *In re McLaughlin*, 183 B.R. 171, 177 (Bankr. W.D. Wis. 1995).

71.     The Trust has not pleaded any facts to support a deviation from that default approach to restoring the value that Cred otherwise would have had.  And it certainly does not plead facts to support why awarding it an amount equal to the "greatest value" of the BTC since the time of the Transfer to the end of this litigation could be warranted.  That request on its face seeks a windfall based solely on fluctuations of BTC rather than anything based on any cognizable theory of damages.

72.     The Court may take judicial notice of the fact that BTC fluctuates dramatically.  *See e.g.*, https://www.coindesk.com/price/bitcoin/); *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 78 F. Supp. 3d 556, 558 (E.D.N.Y. 2015) (taking judicial notice of exchange rates).

73.     The fraudulent transfer statutes are remedial, rather than punitive.  *In re Best Prod. Co., Inc.*, 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994); *In re Tronox Inc.*, 429 B.R. at 111.  Neither the Bankruptcy Code generally nor Bankruptcy Code § 550 is designed to afford a trustee a windfall, as courts have made clear in a variety of contexts.  *See In re DSI Renal Holdings, LLC*, 2020 WL 550987, at *8 n.54 (Bankr. D. Del. Feb. 4, 2020) (explaining that "Section 550 and Third Circuit

law" preclude windfalls); *see also In re Sawran*, 359 B.R. 348, 354 (Bankr. S.D. Fla. 2007) ("Conferring a windfall to the Debtor's estate would be contrary to section 550's purpose of merely restoring the estate to its pre-transfer condition."); *In re Incare, LLC*, 2018 WL 2121799, at *16 (Bankr. E.D. Pa. May 7, 2018) (holding that bankruptcy policy and Section 550 do not support "windfall[s] to the estate").

74.     That the Complaint seeks a windfall is obvious from the facts that the Trust again chooses to write around.  For example, the Complaint has not alleged that Cred had a practice of holding BTC for any protracted period.  To the contrary, the Complaint pleads that Cred immediately converted over 90% of the cryptocurrency it borrowed under CredEarn to dollars and made loans to MoKredit.  Compl. ¶ 7.  The Complaint certainly has not alleged that Cred had a business plan of holding BTC indefinitely, such that it ever would have been in a position to keep the BTC and sell it at its "greatest value."[12]  Nor could anyone plausibly have such a business plan, which would hinge on correctly predicting the "greatest value" of BTC to time the locking in of gains.  This is the very definition of a request for a speculative windfall.  There is no basis for such a remedy to be on the table.

## V.     CONCLUSION

75.     The Trust's claims are defective in fundamental ways that cannot be cured by re-pleading.  Accordingly, Strong respectfully requests that the Court dismiss Counts I, II, III, IV and V of the Complaint ***with prejudice***.  To the extent the Court does not dismiss Count V, Strong

---

[12] Although this fact is beyond the four corners of the Complaint, it should be obvious that such relief also has the prospect of being extremely punitive toward Strong, who believed he was being repaid pursuant to the terms of the Subscription Form.  The suggestion that Cred repaid Strong his BTC, did not tell him at the time of the Transfer that it believed it was doing so for no value, left him free to use or dispose of that BTC as he chose, and yet Strong would now be responsible for uncapped upside appreciation in BTC, is unsupportable.

respectfully requests the Court strike should strike the portion of Count V that seeks to recover the

"greatest value" of the BTC pursuant to Rule 12(f).

Dated: May 4, 2022
          Wilmington, Delaware

                                        **THE ROSNER LAW GROUP LLC**

                                        */s/ Jason A. Gibson*
                                        Frederick B. Rosner (DE 3995)
                                        Jason A. Gibson (DE 6091)
                                        824 N. Market Street, Suite 810
                                        Wilmington, Delaware 19801
                                        Tel.:  (302) 777-1111
                                        Email:  rosner@teamrosner.com
                                                  gibson@teamrosner.com

                                        **ARENTFOX SCHIFF LLP**

                                        Mary Joanne Dowd, Esq. (admitted *pro hac vice*)
                                        Jackson D. Toof, Esq. (admitted *pro hac vice*)
                                        1717 K Street, N.W.
                                        Washington, DC  20006
                                        Tel.: (202) 857-6000
                                        Fax:   (202) 857-6395
                                        Email:  mary.dowd@afslaw.com
                                                  jackson.toof@afslaw.com

                                        -and-

                                        **WILLIAMS & CONNOLLY LLP**

                                        Ellen E. Oberwetter, Esq. (admitted *pro hac vice*)
                                        Stephen L. Wohlgemuth, Esq. (admitted *pro hac vice*)
                                        Williams & Connolly LLP
                                        680 Maine Ave., S.W.
                                        Washington, DC  20024
                                        Tel.:  (202) 434-5000
                                        Email:  eoberwetter@wc.com
                                                  swohlgemuth@wc.com

                                        *Counsel to Winslow Carter Strong*