UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*, | . |  |
|  | . | (Jointly Administered) |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . | . |  |
| CRED INC., LIQUIDATION TRUST, | . | Adv. Proc. No. 22-50134 |
|  | . |  |
| Plaintiff. | . |  |
|  | . |  |
| v. | . | Courtroom No. 5 |
|  | . | 824 North Market Street |
| WINSLOW CARTER STRONG, | . | Wilmington, Delaware 19801 |
|  | . |  |
| Defendant. | . | Wednesday, June 29, 2022 |
| . . . . . . . . . . . . . . . . | . | 1:00 P.M. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

For the Cred Inc.,
Liquidation Trust:      Joseph Evans, Esquire
                        MCDERMOTT WILL & EMERY LLP
                        1 Vanderbilt Avenue
                        New York, New York 10017


Audio Operator:         Jermaine Cooper

Transcription Company:  Reliable
                        1007 N. Orange Street
                        Wilmington, Delaware 19801
                        (302)654-8080
                        Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

APPEARANCES (CONTINUED):

For Earnity:                    Daniel Glassman, Esquire
                                K&L GATES LLP
                                1 Park Plaza
                                Twelfth Floor
                                Irvine, California 92614

For Winslow Strong:             Ellen Oberwetter, Esquire
                                WILLIAMS & CONNOLLY LLP
                                680 Maine Avenue SW
                                Washington, DC 20024

1                                    <u>INDEX</u>

2    <u>MOTION GOING FORWARD AS A STATUS CONFERENCE</u>:          <u>PAGE</u>

3    Agenda
     Item 1:    Motion of the Cred Inc. Liquidation Trust        4
4               to Compel Compliance with Subpoenas Under
                Rule 2004 of the Federal Rules of Bankruptcy
5               Procedure (Filed 12/28/21) [Docket No. 947]
                [Filed Under Seal]
6
                Court's Ruling:                                  20
7

8    <u>MATTER GOING FORWARD</u>:                                    <u>PAGE</u>

9    Agenda
     Item 2:    Winslow Carter Strong's Motion to Stay           21
10              Discovery Pending a Ruling on His Motion to
                Dismiss (Filed 5/31/22)
11              [Adv. Case No. 22-50134; Adv. Docket No. 19]

12              Court's Ruling:                                  32

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Proceedings commenced at 1:02 p.m.)

2  THE COURT:  Good afternoon.  This is Judge Dorsey.

3  We're on the record in Cred Inc., Case No. 20-12836.

4  I will go ahead and turn it over to debtor's

5  counsel to run the agenda.

6  MR. EVANS:  Good morning, Your Honor.  Joseph

7  Evans from McDermott Will & Emery on behalf of the Cred Inc.

8  Liquidation Trust.  I am here with my colleagues Darren

9  Azman, David Hurst, Tim Cramon, and Sam Ashworth.

10  First on the agenda today, Your Honor, is the

11  status conference for the motion of Cred Inc. Liquidation

12  Trust to compel compliance with subpoenas under Rule 2004 of

13  the Federal Rules of Bankruptcy Procedure with respect to

14  Earnity.

15  THE COURT:  Go ahead.

16  MR. EVANS:  So, Your Honor, we served subpoenas on

17  August 12th -- 2004 requests on August 12th, 2021 with

18  Earnity.  After months of back and forth discovery disputes

19  the court finally issued an order on June 1st, 2020 providing

20  for very specific discovery production obligations for

21  Earnity to comply by June 10th.  This hearing concerns

22  whether Earnity has complied with the court's order.  They

23  have not.

24  On the eve of this hearing we received a

25  declaration from Earnity indicating they have not complied.

1  Specifically, they have not produced phone data that was

2  required to be produced by June 10th.  They have also

3  suggested that they have just now hired a vendor to start

4  collecting phone data.  They raise, for the first time, that

5  they are evaluating GDPR regulations concerning Mr. Carosa.

6  And there has been a series of questionable activity since we

7  started seeking discovery from Earnity.

8         So here we are ten months after serving our

9  initial subpoena and we still do not have compliance.  And to

10 provide some background, Judge, I won't go into all of the

11 back and forth, but after we served the 2004 subpoena we

12 granted a number of professional courtesies and extensions of

13 time that ultimately resulted in the production of a total of

14 three PDF's; that was in September.

15        We went through a number of phone calls, letters,

16 emails, and on December 28th the trust filed a motion to

17 compel.  Earnity asked for more time to respond to the motion

18 to compel.  We gave them more time to respond to the motion

19 to compel.  Earnity has never, in fact, responded to the

20 motion to compel at all.

21        The parties engaged in a discussion over a

22 production agreement which resulted in a February 2nd, 2022

23 production agreement which is, expect for one issue,

24 identical to the stipulation that was finally entered by the

25 court on June 1st, 2020.  Earnity agreed to comply, that was

1  in February.  Earnity did not comply in February.  Earnity

2  submitted letters in March complaining about the search

3  terms.

4          Then we went back and forth, and back and forth,

5  and finally the hearing was going to be on June 2nd.  And

6  based on a series of meet and confer phone calls we decided

7  to enter a stipulated order so that Earnity would be required

8  to comply by June 10th. That was ordered by the court on June

9  1st, Docket No. 1010.  They have not complied.

10         Specifically, Paragraph 8 requires that Earnity

11  will produce all non-privileged communications including text

12  messages, WhatsApp, and communications on other messaging

13  applications prior to March 2021 between Mr. Carosa and any

14  of the following individuals: Mr. Schatt, Mr. Pilka

15  [phonetic], and Mr. Goldstein.  That was not done.

16         Last night we received a declaration from Earnity

17  indicating in that declaration's Paragraph 8 that they have

18  retained a vendor to collect all messages, texts, and other

19  communications from Mr. Schatt's personal cell phone to

20  search for communications, and that they expect to produce

21  responsive non-privilege communications as promptly as

22  possible.

23         Perhaps more concerning is Paragraph 9 in which

24  they raise, for the first time, since the 2004 was issued in

25  August that Mr. Carosa is from Australia, resides in Europe,

1 and they claim that they are "evaluating" applicable data

2 privacy regulations including the GDPR, and that Earnity will

3 keep the trust council apprised of the status of the

4 collection.

5          The first time we have ever heard this is the day

6 before this hearing, ten months after the 2004 request was

7 served.  The failure of Earnity to comply does not just cause

8 annoyance and extra work, its costing significant costs.  The

9 trust has been burdened with back and forth letter writing,

10 agreed upon dates, failure to meet those agreed upon dates,

11 emails about the failure to meet those agreed upon dates, we

12 negotiated the terms of this discovery agreement back in

13 February that was agreed to that wasn't complied with, and

14 then we filed a motion to compel that wasn't responded to.

15          At the last hearing, right before the last hearing

16 we agreed to only agree to adjourn if there was a court order

17 hoping that Earnity would comply if the court ordered it.

18 They still have not.

19          Earnity has produced some documents.  They

20 produced some documents on June 10th.  It's not clear which

21 ones were and were not produced.  There were a total of

22 approximately 800 documents, more than 400 of which were spam

23 emails.  Not a single text message or phone message was

24 produced.

25          At this point, Judge, we're at a loss as to what

1  to do.  It's gone beyond a mere discovery dispute.  Now

2  there's a court order that has been violated.  The request is

3  that there be complete compliance with the court's order

4  within seven days, that the declaration attesting the

5  compliance, which is required to be produced by June 10th, be

6  produced both to counsel and to the court in camera.  We also

7  suggested that there should be a penalty for non-compliance

8  here.

9         We have been chasing them for ten months and while

10  going back and forth, and going back on promises between

11  counsel is one thing, now there is a court order.  It wasn't

12  a suggestion, it was a requirement.  We only agreed to

13  adjourn the hearing based on the fact that there be a court

14  order that they already would have to comply with.

15         That is all from us, Your Honor.

16         THE COURT:  Let me hear from the other side.

17     (No verbal response)

18         THE COURT:  You're muted.

19     (Pause)

20         MR. GLASSMAN:  Your Honor, can you hear me now?

21         THE COURT:  Yes.

22         MR. GLASSMAN:  Apologies for that.  We are having

23  a technical issue on our end.

24         This is Dan Glassman with K&L Gates on behalf of

25  the Earnity entities.  Also on the line are my colleagues

1  Matt Goeller and Carly Everhardt.

2         Very briefly, Your Honor, and thank you for the

3  opportunity to respond, I won't get into detail about the

4  history of the subpoenas.  I don't think this is the correct

5  forum for that other than to say, as you're aware, Earnity is

6  a third-party.  Earnity played no role in the Cred

7  bankruptcy.  There is no evidence that Earnity has Cred

8  assets, is using Cred assets, took Cred assets and this

9  investigation has been going on for a year and a half.

10         The subpoena that counsel referenced was

11  unbelievably overreaching and broad.  For just an example it

12  asked for all documents concerning cryptocurrency.  Well

13  Earnity isn't the cryptocurrency space. It asked for all

14  communications amongst senior management on any topic

15  regardless of the context.  It literally asked for every

16  piece of paper that Earnity had.  Again, Earnity is a third-

17  party with no relation to the Cred bankruptcy other than a

18  few of its employees had worked for Cred.

19         THE COURT:  Did you file a motion for protective

20  order?

21         MR. GLASSMAN:  I'm sorry, we served objections and

22  then counsel and I, Mr. Evans and I, I believe, worked in

23  good faith.  I don't think there is any allegations that we

24  didn't and we started to narrow the subpoena to avoid the

25  need for judicial intervention.

1    Back in February Mr. Evans provided us with 53

2   search terms and 10 custodians.  We agreed to pull the emails

3   and the phone data.  The search terms were pretty broad.  I

4   think it hit a hundred some thousand emails.  The biggest

5   problem was one of the search terms was earn, E-A-R-N, so it

6   pulled every reference to Earnity including all of the

7   signature lines.

8    So, again, Mr. Evans and I worked in good faith.

9   The motion was teed up.  We are having, you know, last minute

10   negotiations.  Our objection was due the following morning

11   and we agreed to the stipulation that Your Honor entered.

12   From the jump I told Mr. Evans that the timing was incredibly

13   aggressive.  I don't know if it was two weeks, ten days, I

14   think I asked for a month, but counsel wouldn't budge and our

15   backs are against the wall.  We didn't want to have to file

16   the objection the following day so we agreed.

17    I told him pretty early in the process that the

18   phone data might take longer than anticipated just because

19   vendors had to get involved.  I didn't get into the details

20   why.  Mr. Carosa resides out of the country.  There were

21   issues with the phone data and we hadn't pulled any of that

22   yet.

23    I will also point out that Mr. Carosa and Mr.

24   Schatt don't have business phones.  They have their personal

25   phones which I'm not sure a third-party subpoena to a company

1  wouldn't even breach.  We produced all their emails already.

2  Any work they were doing on those phones would have been

3  their email and their slack messages, and those were captured

4  by the email pool.

5          So with regard to the stipulation we pulled every

6  email from all 10 custodians and ran the -- I want to say it

7  was 150,000 in total.  We ran the 53 overly broad search

8  terms and I want to say, it's in the declaration, that

9  widdled it down to 15,000 emails and about 5,000 slack

10  messages, I believe.

11          We then deployed six of our attorneys to review

12  those 15,000 emails because, again, it was an incredibly

13  short time, and they did that.  Then my colleague, Ms.

14  Everhardt, who is on the call, and myself did a second level

15  quality control review of what the reviewers had done by the

16  deadline that we had agreed to.

17          We produced, I don't have the exact numbers in

18  front of me, it was almost 1,000 emails, about 900 I believe

19  it was.  About 5,000 pages and, again, Earnity has only been

20  an entity for two years.  So 1,000 emails for a two year old

21  company we thought was pretty substantial.  Again, I told

22  counsel we are having issues with the phones and we were

23  working diligently on that with vendors and folks -- there is

24  nothing that we could do in such a short time.

25          One of the issues we have dealt with is the

1  liquidation trust thinks there are documents there that just

2  don't exist.  This conspiracy theory that Earnity stole the

3  assets, are operating on the stolen source code, using stolen

4  money as their operational expenses it's a fabrication, it's

5  not true.

6         As Your Honor, who has lived with this matter

7  since day one, knows the true villains in the case and where

8  the money is and that is not Earnity.

9         So the long and the short of it is we have

10 produced every email that we agreed to produce.  Fifty-three

11 search terms against 10 custodians.  That was, I will say,

12 Your Honor, the focus of the subpoena and the focus of the

13 stipulation were the emails.

14        We also -- so that is done, that was done by the

15 deadline and that is 95 percent of what they thought.  We

16 also confirmed that eight of the ten custodians -- I'm sorry,

17 all 10 of the custodians do not have separate business phones

18 and what we agreed in the stipulation was we would search

19 their business phones.  They don't have them.  In fact, the

20 business they conduct is on their email and their slack, and

21 we produced those off the company severs.  So that is another

22 large chunk of the subpoena that we complied with on time.

23        The only thing remaining, that I'm aware of, are

24 the text messages from Mr. Schatt and Mr. Carosa's personal

25 phones.  Again, an issue I raised day one of the stipulation

1 | that it might take longer than necessary. We have -- counsel
2 | is correct, as I put in my declaration, we have been
3 | completely transparent. We have retained a vendor and that
4 | vendor is in the process, it may be done, of gathering Mr.
5 | Schatt's text messages which we will -- I am assuming that
6 | will be much lower volume then the emails, so we should be
7 | able to get through those a lot quicker. We will produce
8 | responsive non-privileged documents that came off of Mr.
9 | Schatt's personal phone.

10 | I think the seven day timeline that Mr. Evans
11 | requested I think that's doable. Mr. Carosa, I am not an e-
12 | discovery attorney, but I am learning phones and data of
13 | European residents have a different regulatory scheme. That
14 | was another hurdle that we have bumped into and its one of
15 | the reasons why I let Mr. Evans know from the jump that this
16 | might take a little longer.

17 | Once we get past that and we get Mr. Carosa's data
18 | if there is anything on their responsive we will produce
19 | that. Is that in five days or seven days I just don't know
20 | the answer to that question, Your Honor, but, again, just
21 | like we did with the emails we will get those to counsel as
22 | quickly as possible.

23 | The notion that this is somehow costing them more
24 | money or holding up the liquidation trust's pursuit of the
25 | missing Cred assets it's just not true. Mr. Carosa never

 1  heard of Cred until after the bankruptcy.  Mr. Carosa never

 2  heard of Mr. Schatt until after the bankruptcy.  They met

 3  well after Cred filed for bankruptcy.  So the notion that he

 4  has all this great information on his personal telephone it's

 5  just not true.

 6           That being said, in the interest of cooperation we

 7  have agreed we will produce that stuff and we will get it to

 8  counsel just as soon as we can.  So I think as far as getting

 9  them -- again, 95 percent or more of the agreed upon

10  information has been provided. I have asked counsel on a

11  couple of occasions putting the phone data aside if you think

12  there's documents that are missing let us know and we can

13  meet and confer on that.

14           So the notion that we are not complying or

15  ignoring your order, or should be sanctioned for, you know,

16  poor conduct just is not the case, Your Honor.  We moved

17  mountains to do that email search and got it done on a very,

18  very tight window.  Then we turned to the text messages.

19           So I am in complete agreement with Your Honor if

20  you want to set a time deadline for us to really just tie-up

21  the loose ends on the subpoena and get -- I'm sorry, on the

22  stipulation and get that fully resolved, then counsel and I

23  can talk, if there's anything else he thinks is missing we

24  will work with them on that.

25           Again, counsel never mentioned -- we have offered

1  Earnity witnesses to be deposed. I offered that back in

2  January so they could get a sense of what Earnity is, what it

3  does, what documents they have so we didn't have to go down

4  these chasing windmill wild goose chases.  They have never

5  took me up on it.  It's been five months and they've never

6  said, okay, we'll take a deposition and see what is there. It

7  hasn't happened because they're not really super interested

8  in getting the information, Your Honor, because it's not

9  there.  They want to go after Mr. Schatt.  They want their

10 pound of flesh.  They want to harass Earnity, if there is any

11 harassment going on.

12       So to wrap-up, Your Honor, again, thank you for

13 allowing me to respond, we're fine and we could have done

14 this informally on setting a deadline to get him those

15 documents.  As far as monetary sanctions or any type of other

16 sanctions it's just not warranted in this case, Your Honor.

17 We have been working in good faith, both sides have, to be

18 frank, on the lawyer side and, you know, sometimes these

19 things just take time.

20       So I will stop there and let Mr. Evans respond.

21 Thank you.

22       MR. EVANS:  Your Honor, if I could have the

23 opportunity to respond.

24       THE COURT:  Go ahead.

25       MR. EVANS:  I am going to take a couple of things

1  that Mr. Glassman said in order.

2        First, as to the question on the breadth of the

3  subpoena there was no motion for a protective order.  We

4  didn't negotiate some of the terms, but we also filed a

5  motion to compel and they never responded.  So any question

6  as to the breadth of the subpoena I mean that ship has

7  sailed.

8        Now what is odd is that he's saying, well, a

9  vendor had just been retained.  The subpoena was issued in

10  August of 2021.  We agreed, through a production agreement,

11  in February with these same terms, phone data, Mr. Carosa's

12  phone, Mr. Schatt's phone, this isn't new.

13        So now we're hearing just on the eve of this

14  hearing, which is after a court order was issued, that they

15  have just now hired a vendor and they're working through GDPR

16  issues.  This should have been resolved ten months ago.  And

17  this concept that the trust is not super interested in

18  Earnity, if we weren't super interested in Earnity, Judge, we

19  wouldn't be filing a motion to compel, we wouldn't be

20  entering into orders, we wouldn't be dealing with counsel

21  constantly over these same issues.

22        Now the other thing is the scope of discovery that

23  Earnity is stating is less then what was in the stipulated

24  order which was a court order the court ordered.  The non-

25  privileged communications including texts, WhatsApp, and

communications, and other messaging applications prior to
March 2021 between Carosa and any of the following
individuals, Schatt, Pilka and Goldstein. So that covers
Schatt, Pilka, and Goldstein. That hasn't been done.

I take Mr. Glassman's point that things take time,
but not ten months. We pull phone data all the time. We
hire a vendor, phone data gets pulled in two days if that.
We have done it in a day. So this concept that they're
working really hard at this and trying to get this done, and
there's some technical issue that is not what is going on
here. I haven't heard any technical issue. I heard a legal
issue that just came up the first time, ten months later
(indiscernible) waived. It was not in their original
objection and there was no motion to compel.

So here what has been produced are emails, 50
percent of which are spam emails, and they're not the core
communications that we're really seeking which are the ones
between the key executives. That is what we're looking for
here. I mean that was the core part of this stipulation.

Look, my proposal is that if Mr. Glassman and
Earnity says that they can produce in seven days great, but
there is no question here that they violated the court order.
The court order required it to be done by June 10th. They
have admitted that in their declaration and they're admitting
it now.

1       So just an order to comply with the order, in our

2  view, isn't good enough.  So what we suggest is upon monetary

3  penalty, daily, until they comply with the order give them

4  seven days to respond, seven days to comply and if it takes

5  longer than that they get a monetary penalty.  We would

6  suggest 10k a day.  And if they're going to comply no

7  problem, there's no penalty.  If they're not going to comply

8  then there's a problem.  Maybe that might move Earnity and

9  their executives to actually comply with the subpoena that

10  they have agreed to comply with.

11       MR. GLASSMAN:  Your Honor, may I add just one

12  point.

13       THE COURT:  Go ahead.

14       MR. GLASSMAN:  Thank you, Your Honor.  Dan

15  Glassman, again.

16       On the notation on the delay, we served timely

17  objections, I believe, including to the overbroad requests on

18  the cell phones.  We didn't have to bring a motion for a

19  protective order.  They file the motion to compel but filing

20  a motion to compel is not the trigger for an unrelated third

21  party to go to the significant expense of pulling data.

22       Once Your Honor entered the order, then that that

23  was the trigger for us to go and begin the process of pulling

24  the data.  That's when I told Mr. Evans that the two-week

25  time -- whatever the time frame we -- kind of was jammed down

1 our throat, that that was just too quick, but I made no

2 headway there, and I understand why Mr. Evans held to that

3 date.

4 So, the notation that we should have been pulling,

5 a third party should have been pulling and reviewing data,

6 just because a subpoena was served and then properly objected

7 to, that's just not accurate, Your Honor. As soon as we

8 agreed to the stip and Your Honor entered it, we went -- we

9 started the process of pulling all the stuff. And, again, we

10 pulled 150,000 emails, reviewed 15,000 of them, and produced

11 almost a thousand of them in a very short window.

12 So, I don't think monetary sanctions are

13 appropriate in this. I think this is what we are now arguing

14 about in this instance. If Your Honor wants to put our feet

15 to the final fire, this is, I believe, what's left of the

16 subpoena. Seven days, that's fine, and if Your Honor wants

17 to, you know, start the monetary sanction clock after that, I

18 think that's what I heard Mr. Evans suggesting in the last

19 response, that if we meet that deadline, the monetary

20 sanctions won't -- wouldn't start accruing until after that

21 deadline has passed. And he's nodding, so I think we're on

22 the same page as that one.

23 And if Your Honor is -- we would suggest no

24 sanctions, but if Your Honor is inclined to give us, 7, 10,

25 14 days, whatever Your Honor thinks is reasonable to get the

1 phone data pulled and produced, reviewed -- the reviewing is

2 the -- the pulling is not the timely; it's the reviewing --

3 pulled, reviewed, and produced, that's fine. I think that's

4 a fair resolution to where we are at this point.

5 And then if Your Honor wants to set some sort of

6 penalty procedure if that deadline is missed, then that seems

7 reasonable, as well. So, I don't think anything should

8 accrue starting today.

9 THE COURT: All right. So, here's what I'll do

10 then. I'm going to give you -- I'm not going to impose any

11 sanctions now. I'll give you 14 days to comply with the

12 order that was entered, previously entered, and provide a

13 declaration that lays out all the discovery that's been

14 produced, how it's been produced, what the process was to get

15 it produced, and provide that both, to Mr. Evans and

16 chambers. That can be done *in camera*, at this point.

17 And at the end of the 14 days, Mr. Evans, if they

18 have not complied with producing all the documents that are

19 required to be produced, at that point, you can bring another

20 motion to seek sanctions at that point and I'll consider them

21 at that time.

22 MR. EVANS: Thank you, Your Honor.

23 MR. GLASSMAN: Thank you, Your Honor.

24 THE COURT: And, Mr. Evans, you should, and

25

1    Mr. Glassman, you should submit a form of order under COC to
2    that effect.
3              MR. GLASSMAN:  Will do.  Thank you, Your Honor.
4              MR. EVANS:  Your Honor, next on the agenda is
5    Winslow Carter Strong's motion to stay discovery pending a
6    ruling on this motion to dismiss.  It is Mr. Strong's motion,
7    and so I leave counsel to introduce themselves.
8              THE COURT:  Okay.
9              MS. OBERWETTER:  Good afternoon, Your Honor.  This
10   is Ellen Oberwetter, from Williams & Connolly in Washington,
11   D.C.  I have not had the opportunity to appear before Your
12   Honor in this matter or any other.  It's nice to be here.
13             With me today is my colleague Steve Wohlgemuth
14   from Williams & Connolly.  Also prolonged indeterminate
15   period of time is Mary Jo Dowd and Jackson Toof from the
16   Arent Fox firm, who are our co-counsel in this case.  And
17   also present is Jason Gibson from The Rosner Law Group, who's
18   our local counsel in this case.
19             I am not sure with the Court's familiarity with
20   the background of this case, but it involves actual and
21   constructive fraudulent transfer claims that the trust is
22   bringing against my client, Winslow Strong, who was a Cred
23   customer and who received Bitcoin he had loaned to Cred.  He
24   received his money back from Cred in July 2020, more than
25   four months before the Cred bankruptcy.  That repayment is

1 the subject of the trust's avoidance claims and its actual

2 and constructive fraudulent transfer claims.

3 And so pending today is Mr. Strong's motion for a

4 stay of discovery, pending consideration of the motion to

5 dismiss. We filed the motion because our motion to dismiss

6 makes an argument of contract interpretation that is case

7 dispositive and that can be ruled on as a matter of law.

8 The issue is whether Cred had a contractual duty

9 to pay my client Winslow Strong at the time that the trust

10 alleges the transfer happened, whether it had the contractual

11 duty to pay him the Bitcoin that is the subject of the

12 present avoidance action.

13 This is different than simply coming to court and

14 saying, we'd like a stay of discovery because we'd like for

15 the trust to plead a few more elements of the claim.

16 Obviously, issues of contract interpretation are decided as a

17 matter of law at the motion to dismiss stage all the time.

18 This is that type of situation, where we believe there's

19 clear and unambiguous language on the face of the contract

20 that establishes the contractual obligation that runs

21 directly from -- that ran directly from Cred to Mr. Strong

22 and that meant that the repayment was on an antecedent debt,

23 therefore, negating a fraudulent transfer claim and making

24 clear that they can't plead actual fraud if they were paying

25 him on an obligation that they actually had to him.

1          I think there are -- I don't think that there is

2   really any question that the Court has authority to enter the

3   stay.  The Third Circuit has made clear in the Mann v Brenner

4   case that we cited in our papers, that a stay can be

5   appropriate where, if the motion to dismiss is granted,

6   discovery would be futile.

7          The argument that we are advancing is that the

8   language of the subscription form, the subscription agreement

9   that the trust attached to its complaint is plain on its

10  face.  There is no need for any discovery to resolve the

11  question.  You can just read the language and decide the

12  question.

13         We are not asking the Court to prejudge that

14  argument in advance of either, an oral argument or further

15  consideration of the papers the parties have now submitted on

16  the motion to dismiss, but to recognize that, in fact, our

17  motion raises a case-dispositive -- presents a case-

18  dispositive basis for dismissing the case if the Court agrees

19  with our reading of the contract.

20         We don't believe there's any prejudice in

21  proceeding in this manner to the trust, which has the benefit

22  of Rule 2004 discovery from Mr. Strong already; they've had

23  that for some time at this point.  They obviously have had

24  the benefit of extensive Rule 2004 discovery, to which we

25  have not yet been privy.  And so, if they want to spend their

1  time, in advance of a ruling on the motion to dismiss,

2  sorting through what they want their case against Mr. Strong

3  to look like, working with their experts, drafting their

4  deposition outlines, they have the tools available to them to

5  do that, if they would like to be going forward in that

6  manner.

7         My client is an individual.  Obviously, he would

8  prefer not to spend money unnecessarily, and we believe that

9  the motion we have presented raises a type of issue that

10  should mean the parties shouldn't waste resources until there

11  has been consideration of this potentially case-dispositive

12  issue.

13         THE COURT:  All right.  Mr. Evans?

14         MR. EVANS:  Thank you, Your Honor.

15         We understand that Mr. Strong in his papers, and

16  just now, is saying he's not asking the Court to look to the

17  merits of the motion to dismiss, understand to determine the

18  motion to stay, but that's exactly what he's doing.

19  Mr. Strong's argument is that since there was an antecedent

20  debt, the case should be dismissed and, therefore, I think

21  they said he'd obviously prefer not to spend money.

22         That's not the standard for a motion to stay.  The

23  case that counsel just cited, Mann v Brenner from the Third

24  Circuit, that's 375 F. App'x 232, that was a case in where a

25  serial litigant filed three identical civil rights lawsuits.

1  The prior two were dismissed and then apparently, the

2  Plaintiff did not comply with the Court's direction as to how

3  to remedy the complaint.

4          That's one the cases that they rely on.  That's an

5  obvious case in which the Court was going to dismiss that

6  complaint yet again.  Similarly, they rely on the Zurich

7  American Insurance case, 2021 WL 4493532, (E.D. Cal. Oct. 1,

8  2021).  In that case, a hundred other cases were filed under

9  the same contractual provision under the same insurance

10  policy.  All were dismissed.

11          Those are the types of cases, Judge, in where a

12  stay is appropriate.  That's exactly why that's the exception

13  and not the rule.  There are certain types of causes of

14  action, like the private securities litigation

15  (indiscernible) case, where a stay is automated.  Those are

16  the types of cases where a stay is appropriate.  Not this

17  one.

18          This stay is based solely on their belief that the

19  Court will grant their motion to dismiss in the future.

20  That's it.  That's their whole argument.  They take great

21  pains to argue that.  They are not arguing that.  They're

22  just arguing that while there's this little contractual

23  provision and if you look in this contractual provision, you

24  can resolve the case.  That's a substantive argument.  That's

25  a motion to dismiss argument and that's what they've briefed

1  (indiscernible).  We've been back and forth.  The motion to
2  dismiss is pending.

3        And so, really, can just deny this motion out of
4  hand.  I mean, there is no articulable harm.  The only harm
5  that has been identified by counsel now and in their papers
6  is he doesn't feel like paying for it.  Well, no one wants to
7  pay for discovery.  That's not a ground to -- that's not a
8  ground to go (indiscernible) from the norm, which is
9  proceeding with discovery, pending the motion to dismiss.

10       And to the extent the Court wants to consider the
11 motion and wants to consider it on its substance, counsel's
12 reading of the contract is just wrong.  It's just wrong.
13 They're claiming that Cred had an obligation to pay Winslow
14 Strong under the Luxembourg bonds and, therefore, when Cred
15 transferred 516 Bitcoin on July 1st, they were paying an
16 antecedent debt.  It's just not so.

17       There were three contracts at issue in this case.
18 The first is a January 9th, 2020, CredEarn agreement between
19 Cred and Strong.  Under that agreement, Strong lent Cred 500
20 Bitcoin.  Cred agreed to pay back Strong 500 plus interest.
21 That was a January 9th, 2020, CredEarn agreement.

22       The second agreement, the key agreement here is
23 the January 30, 2020, Luxembourg bond and that's the
24 subscription form that counsel was identifying, along with a
25 base prospectus and the final terms of the notes.  In that

1  contract, it states under paragraph 2:

2          Noteholder elects to -- to terminate its contract

3  with calculation agent, which is Cred, specified below.  The

4  existing Cred contract.

5          The second the subscription form was signed, Cred

6  no longer had an obligation to pay Winslow that 500 Bitcoin.

7          Now, while there's an argument here, based on

8  paragraph 4 of the subscription form, what's missing from

9  these arguments, what's missing from papers, what's missing

10  from the reply brief, is the clear provision in the base

11  prospectus, which is incorporated by reference, which

12  describes, quote, the obligations under the note.

13          The obligations under the note are set forth on

14  page 16 of our opposition brief, which is Exhibit N to the

15  complaint, and it states, the notes are obligations, solely

16  of the relevant issuer, which is defined as Income

17  Opportunities.

18          The notes do not constitute a liability or other

19  obligation of any kind of the paying agent, which is

20  Cred, LLC; the calculation agent, which is Cred, LLC; or any

21  of their respective affiliates or any other third party or

22  entity.  The notes are not and will not be insured or

23  guaranteed by the paying agent, calculation agent, or any of

24  their respective affiliates or any other third party or

25  entity, and none of the foregoing assumes or will assume any

1    liability or obligation of the holders of the notes if the
2    issuer fails to make any payment due in respect of the notes.

3            That's it.  So, there's a subscription form.
4    There's a base prospectus.  But this paragraph 2.2 says in
5    bold letters:  Obligations under the notes, it says that Cred
6    does not have to pay.

7            Cred's role in all of this was as a calculation
8    agent and a paying agent and what it means is that once
9    Winslow purchased the bond, Income Opportunities and only
10   Income Opportunities was obligated to repay that bond.  Cred
11   was operating as a quote, unquote, calculation agent or a
12   paying agent and only was obligated to pay Winslow Strong if
13   Income Opportunities paid Cred first, and it never did.

14           And so, for that reason, there is no antecedent
15   debt.  We don't need to get there on this motion because
16   there's no (indiscernible) or rare circumstance that would
17   require a stay or any identifiable prejudice or any
18   identifiable harm to Mr. Strong more so than any other
19   litigant that's a Defendant in a federal action.

20           THE COURT:  Thank you.

21           MS. OBERWETTER:  Your --

22           THE COURT:  Ms. Oberwetter, go ahead.

23           MS. OBERWETTER:  Yes, Your Honor.

24           So, I'll take the various components of that in
25   sequence.  First, I'd just like to go back to the standard

1  and the Court's authority to enter a stay.  Obviously, every

2  case has different facts and circumstances in terms of what

3  might cause a particular case to justify a stay.

4         In Mann v Brenner, the Third Circuit did not say

5  that the justification for the stay was because the person

6  had already filed a series of complaints that were inevitably

7  going to be dismissed.  It said it was because the defense

8  had presented a motion to dismiss that if it prevailed, would

9  be dispositive of the case in a matter that discovery could

10  affect.  That's the test that the Court talked about in Mann

11  v Brenner to empower courts to grant stays in cases where the

12  factor -- the facts and circumstances otherwise support them.

13         We cited a litany of cases.  Mr. Evans talked

14  about the Zurich case.  There are a litany of cases that we

15  added in our reply brief, as well.  It is not uncommon to

16  grant a motion to stay discovery in a contract in the face of

17  potentially dispositive contractual language.

18         I'd like to take the point about the prejudice to

19  Mr. Strong.  I don't think that we should be cavalier about

20  the burdens that the litigation system can impose on

21  individuals; individuals who are not set up with an in-house

22  department or otherwise equipped to dealing with ongoing

23  litigation.  And I think it does make sense to see if there

24  is actually a basis for Cred to even get -- the trust to even

25  get through the start gate here, based on the contractual

1  language that we're pointing to in the motion to dismiss.

2  It may be that the trust already has so many sunk

3  costs and it's pursuing different litigation and it's already

4  read a bunch of the Rule 2004 discovery, such that they are

5  not feeling the burden the same way that a private individual

6  will feel the burden of being about to embark on paying for

7  lawyers to go through that entire record and commence

8  international discovery, which I think everybody thinks is

9  likely to happen in this case.

10  On the subject of the contract itself, the reason

11  that we have brought a motion to dismiss based on language in

12  the contract is because the contract that addresses Cred's

13  obligations to Mr. Strong provides noteholder elects to have

14  calculation agent repay -- repay the fiat principal in

15  interest due to noteholder, under the purchased notes in the

16  form of the cryptocurrency specified below.

17  Again, I'm not looking to have the full

18  contractual argument before the Court today, but that

19  paragraph is in sharp distinction to the paragraph that

20  precedes it where a noteholder could have elected a variable

21  repayment option, where Cred would have been serving only as

22  an agent of the bond issuer.  So, we talked about that issue

23  in our motion to dismiss and in the replies for the motion to

24  dismiss.

25  To go to the point that the trust continues to

1   come back to, which are obligations under the notes, or under

2   the Lux bond, as whichever terminology you want to use, that

3   is not the argument that we are making.  The argument we are

4   making is not about who had the obligation under the note.

5          The argument we are making is the subscription

6   agreement on its face, contains direct, additional,

7   contractual obligations running from Cred on the one hand to

8   Mr. Strong on the other.  There's nothing in the base

9   prospectus that does or could change that, and the

10  contractual language is clear and distinct from the rest of

11  the language in the subscription agreement, where there are

12  references to Cred only acting as an agent.

13         So, I will stop there.  I'm not looking to have

14  that full discussion today, unless Your Honor would like to,

15  but it is a dispositive issue and it would dispose of all of

16  the case if we are correct.

17         MR. EVANS:  Your Honor, if I could briefly

18  respond?

19         THE COURT:  Go ahead, Mr. Evans.

20         MR. EVANS:  The provision counsel is citing is

21  referring to Cred's administrative function as a calculation

22  agent.  If you go just two pages farther into the final term

23  of the notes, which is attached, there's a second sentence

24  that states:

25         This document constitutes the final terms for the

1  notes described herein and must be read in conjunction with

2  the base prospectus.

3          You can't get around 2.2 in the base prospectus,

4  which is the language which identifies that Cred is not

5  obligated to pay, unless it is paid.  And that comports with

6  the language on paragraph, Section 4, which talks about

7  repayment.  Cred is only obligated to pay once Income

8  Opportunities pays.

9          THE COURT:  All right.

10          MR. EVANS:  And while I know counsel is referring

11  to the contracts, every single other piece of evidence points

12  to that same conclusion, including the sworn testimony of

13  every single insider of Cred.

14          And there was an argument that these were self-

15  serving testimony.  It's not self-serving.  These are

16  statements against interests.  These are executives admitting

17  that they made payments that they were not required to make

18  to preserve a relationship.

19          That's all, Your Honor.

20          THE COURT:  Well, I'm going to deny the motion for

21  stay.  I don't think it meets the standard for a stay in any

22  event, but I've also taken an initial review of the motion to

23  dismiss and the papers associated with that motion to

24  dismiss, and I think it's unlikely that motion is going to be

25  granted.  I haven't made a final determination yet.  I'm

1  obviously going to spend a little bit more time reviewing

2  those papers, but it seems to me that on their face, that the

3  motion is not likely to succeed.

4        So, for those reasons, I will deny the motion for

5  a stay of discovery, pending my ruling on that motion to

6  dismiss, which, hopefully, I'll get out pretty quickly.

7        So, again, Mr. Evans, and Ms. Oberwetter, you

8  should confer and submit an appropriate form of order under

9  COC.

10        MR. EVANS:  Thank you, Your Honor.  We'll do so.

11        MS. OBERWETTER:  Yes, Your Honor.

12        THE COURT:  Anything else, Mr. Evans?

13        MR. EVANS:  No, Your Honor.  That concludes the

14  agenda for today.  Thank you for your time.

15        THE COURT:  All right.  Thank you very much.

16        We are adjourned.

17     (Proceedings concluded at 1:46 p.m.)

18

19

20

21

22

23

24

25

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ William J. Garling                    June 29, 2022
William J. Garling, CET-543
Certified Court Transcriptionist
For Reliable

/s/ Mary Zajaczkowski                     June 29, 2022
Mary Zajaczkowski, CET-531
Certified Court Transcriptionist
For Reliable